IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MOTORISTS MUTUAL INSURANCE          :       CIVIL ACTION NO. **3:CV-05-0135**
COMPANY,                            :
        Plaintiff                :
                                 :       (Magistrate Judge Blewitt)
      v.                           :
                                 :
ELIZABETH MUSTO, Administratrix     :
of the Estate of Patrick P. Musto, Jr., :
                                 :
        Defendant                :

**MEMORANDUM AND ORDER**

## I. Background

Plaintiff, Motorists Mutual Insurance Co. ("Motorists"), filed a Complaint on January 20, 2005, seeking multiple Declaratory Judgments with respect to decedent Patrick P. Musto, Jr.'s insurance policy and insurance coverage. (Doc. 1).[1]  Jurisdiction of this Court is based on diversity pursuant to 28 U.S.C. § 1332(a), as Plaintiff is an Ohio company and Defendant resides in Pennsylvania. (Doc. 44, p. 2).

On February 11, 2005, Defendant Elizabeth Musto, Administratrix of the Estate of Patrick P. Musto Jr., filed an Answer and Counterclaim asserting Plaintiff acted in bad faith under 42 Pa. C.S.A. § 8371, Plaintiff violated the covenant of good faith and fair dealing in the insurance policy, and Plaintiff breached the contract of insurance.  (Doc. 4).  Plaintiff filed a Motion to

---

[1]Previously, we referred to decedent Musto as "Patrick Musto, Sr."  However, it is now apparent that decedent Musto was correctly named in this action as Patrick Musto, Jr., and that his son is Patrick Musto III.  For sake of clarity, Decedent Musto will be referred to herein as Mr. Musto.  Mr. Musto's sons Patrick (III) and Michael will be referred to by using their full names.

Dismiss Defendant's bad faith and breach of covenant of good faith and fair dealing Counterclaims on March 2, 2005.  (Doc. 6).  On March 3, 2005, Defendant filed a response requesting Plaintiff's Motion be denied.  (Doc. 7).  Defendant withdrew her breach of covenant of good faith and fair dealing Counterclaim.  (Doc. 12, p. 1).  This Court thus had to decide the issue of whether to dismiss Defendant's bad faith Counterclaim under 42 Pa. C.S.A. § 8371. On August 4, 2005, we issued an Order dismissing Defendant's bad faith Counterclaim.  (Doc. 25).

Subsequently, on December 23, 2005, Plaintiff Motorist filed a Motion to Stay Defendant's UIM Arbitration pending in state court.  (Doc. 30).  Both Plaintiff and Defendant filed their Briefs in support of their respective positions, and we granted this Motion on February 13, 2006.  (Doc. 39).[2]

## II. Pleadings.

In the summer of 1999, the decedent, Patrick P. Musto, Jr. (Mr. Musto), completed an application for insurance with Plaintiff Motorists, and a commercial (fleet) policy was issued under Mr. Musto's business, Tuft-Tex, Inc.  (Doc 4, p.3, ¶ 10, 14; p. 18, ¶49(e)).  On December 30, 2003, Mr. Musto was involved in a fatal collision with a drunk driver in Luzerne County, Pennsylvania, and died due to injuries sustained in the accident.  (Doc. 1, P. 4-5, ¶ 15).  Mr. Musto was driving a 2002 Saturn L200 which was covered by the Motorists' insurance commercial policy issued to Tuft-Tex, Inc.  (Doc. 4, p. 6, ¶ 16; Doc. 14, p. 4).  Motorists paid

---

[2]The parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c)(1).  (Doc. 17).

first party benefits, including accidental death benefits, funeral benefits, and medical benefits. (Doc. 12, p. 9; Doc. 14, p. 4).  Defendant also received $50,000 from the driver of the other vehicle's (tortfeasor's) insurance policy.  (Doc. 4, p. 20, ¶ 49(m)).  This $50,000 amount did not equal the liability limit that Defendant alleges she was legally entitled to, and therefore, Under Insured Motorist (UIM) benefits were sought by Defendant from Plaintiff Motorists.  (Doc. 4, p. 20, ¶ 49(r), (t)).  Plaintiff Motorists denied coverage of UIM benefits (Doc. 4, p. 21, ¶49(u)), and filed the instant Complaint in District Court seeking Declaratory Judgment.  (Doc. 1).

Plaintiff Motorists is seeking the following Declaratory Judgments: (1) Declaratory Judgment relating to insured status - exclusion based upon lack of reasonable expectation of coverage; (2) Declaratory Judgment relating to cancellation - cancellation based upon misrepresentation; (3) Declaratory Judgment relating to lack of coverage - common law recision; and (4) Declaratory Judgment relating to non-stacked UIM coverage.  (Doc. 1, pp. 6-12). Plaintiff bases the majority of its claims on allegations that Mr. Musto did not have a valid driver's license for the past thirty years, that he did not name himself on the driver's list in the Tuft-Tex, Inc.'s  insurance policy application, and that the language of the policy does not allow for stacked UIM coverage.  (Doc. 11, pp. 8-16).  Thus, Plaintiff Motorists seeks to establish that Mr. Musto (decedent) was excluded from coverage under the fleet business auto coverage policy issued to his corporation, Tuft-Tex, Inc., and that his estate is not eligible to receive the $300,000 of UIM coverage available under the fleet policy.  (Doc. 30, pp. 1-2).  Motorists also seeks a declaratory judgment that its UIM coverage non-stacked endorsement did not permit for stacked coverage.  (*Id*. & Doc. 38, p. 4).

3

As mentioned, Defendant filed an Answer and Counterclaims against Plaintiff.[3] Specifically, Count I of the Counterclaim, bad faith, alleged that Defendant reasonably expected that the underinsured coverage under Plaintiff Motorists' policy provided for stacked benefits, and that under Pennsylvania law, in the circumstances of this case, the decedent's Estate is entitled to UM/UIM coverage.  (Doc. 4, p. 21, ¶¶49(x)-(y)).  Defendant also alleged  that Plaintiff acted in bad faith in violation of 42 Pa. C.S.A. § 8371.  *See* (Doc. 4, pp. 22-24, ¶ 50).  As stated, we dismissed the Defendant's bad faith Counterclaim.

On March 29, 2005, after Plaintiff filed the present action, Defendant filed a praecipe for writ of summons in Luzerne County Court of Common Pleas ("LCCCP") asserting a UIM action against Plaintiff Motorists.  No further action occurred in the LCCCP UIM case after the writ of summons was issued, and discovery in the present case then proceeded.  (Doc. 30, p. 7. and Doc. 31, p. 7.).[4]  In December, 2005, counsel for Defendant wrote to Plaintiff's counsel indicating that Defendant was going to proceed with the UIM action filed in state court during the pendency of the present declaratory judgment action in this Court.  Defendant then appointed an arbitrator and requested that Plaintiff do the same.  Plaintiff then filed, on December 23, 2005, a Motion to Stay UIM arbitration until the present case was resolved.

---

[3]    As noted above, Defendant filed three separate counterclaims, Count I - bad faith, Count II - good faith and fair dealing, and Count III - breach of contract.  Defendant withdrew Count II in her Brief in Opposition. (Doc. 12).  This Court dismissed the bad faith counterclaim, Count I.

[4]This Court extended the discovery deadline to March 2, 2006. (Doc. 35).

4

Plaintiff, in its Motion to Stay the UIM Arbitration pending in state court, argued that the issues raised in the present case may resolve all pending issues between the parties, that if the declaratory judgment action is decided in its favor, it would be a waste of resources to proceed with the UIM arbitration in state court, and that since the parties to the present case and the UIM case are identical, the doctrine of *res judicata* and collateral estoppel may apply.  (Doc. 30).

Defendant contended that the issues were not the same in both actions, that there was no decision yet in the present declaratory judgment action, and thus *res judicata* and collateral estoppel do not apply, and that the insurance policy provides that certain issues are to be resolved by the Court and certain issues are to be resolved by arbitration.  (Doc. 31).  Defendant concluded that under the policy and pursuant to *Bottomer v. Progressive Casualty Ins. Co.*, 816 A. 2d 1172 (Pa. Super. 2003), she could proceed with her UIM arbitration case in state court while Plaintiff Motorists' declaratory judgment action in this Court was pending.  (*Id*.).

As mentioned, on February 13, 2006, we issued an Order granting Plaintiff Motorists' Motion to Stay the UIM arbitration case in state court while its declaratory judgment action in this Court was pending.

Following the close of discovery, the parties filed cross-Motions for Summary Judgment pursuant to Fed.R. Civ. P. 56.  (**Docs. 41** (Defendant) and **44**( Plaintiff).  Support Briefs, Statements of Material Facts ("SMF's") and exhibits have been filed both parties with respect to their Motions.  (Docs. 42, 43, 47 (Defendant) & 45, 46, 48 (Plaintiff).  Opposition Briefs have also been filed.  (Docs. 50 (Plaintiff) & 54 (Defendant).   Reply Briefs have further been filed.

(Docs. 59 (Defendant) & 63 (Plaintiff).  Defendant was allowed to file a Sur-reply Brief as well.

(Doc. 68).  Both Motions are now ripe for disposition.

## III.  Undisputed Material Facts.

As stated, both parties have filed their SMF's as required by Local Rule 56.1, M.D. Pa.

(Docs. 42 (Defendant) and 45 (Plaintiff)).  Defendant also properly  filed a response to Plaintiff's

SMF.  (Doc.  56).  We shall not repeat the SMF's to which both parties agree, and incorporate

them herein by reference.  (Docs. 45 & 56, ¶'s 1., 2., 4., 6. (in part, except as to reference to

"fleet" policy).[5]  Further, ¶ 7. is admitted in part, *i.e.* admitted that Mr. Musto handled most, if

not all administrative matters for Tuft-Tex, including insurance matters.  Mr. Musto was the *de*

*facto* head of Tuft-Tex and was actively employed in this family business up to the time of his

death.  (Doc. 42, ¶ 5.).  Mr. Musto was a customer of the Newhart Insurance Agency for many

years and was the individual at Tuft-Tex responsible for dealing with Newhart Agency on

insurance matters.  (*Id.*, ¶ 9. & Doc. 44, p. 3, ¶ 4.).  Mr. Musto filled out the Motorists' insurance

application for a commercial automobile policy for Tuft-Tex, which policy Mr. Musto, on behalf

of Tuft-Tex, purchased through his long-time insurance agent, Mr. Newhart and the Newhart

Agency.  However, Mrs. Musto testified that the writing on the Application of the insurance

policy for Tuft-Tex did not appear to be her husband's, and that only one signature on the

---

[5]The record indicates that a Business Insurance Policy Application was completed for Tuft-Tex, a flooring and carpet business located in Wyoming County, Pennsylvania, owned by Mr. Musto.  The business insurance policy included a commercial auto policy covering eleven vehicles owned by Tuft-Tex.  (Doc. 46, Ex. 1).  However, Defendant notes that Michael Musto testified that several of the Tuft-Tex vehicles on the policy were used for mixed business and personal use.  (Doc. 56, p. 2, n. 1, Doc. 46, Ex. 13, pp. 22-27).  This fact is not disputed.

Application appeared to her husband's.  (Doc. 46, Ex. 11, pp. 50-51).

Paragraph 20., Doc. 45, is admitted, that Mrs. Musto was aware in 1990 that Mr. Musto did not have a license.[6]

Paragraphs 21. and 22. are admitted.  (Doc. 45).  It is admitted that Mrs. Musto requested stacking of the UIM benefits under the Motorists policy at issue.  The language of the Non-Stacked UIM Endorsement in the policy is not disputed.  (¶ 23., Doc. 45).

Paragraphs 24. and ¶ 25. are admitted as to the Pennsylvania Endorsement with respect to Cancellation in the policy, except that the word "omissions" is not underlined.  (Doc. 45).  As discussed below, whether Mr. Newhart had a duty to review the drivers list of Tuft-Tex for accuracy prior to sending it to Motorists and prior to binding the coverage when he was aware of facts material to the acceptance of risk, *i.e.* Mr. Musto was not listed as a driver but he drove all of the vehicles of Tuft-Tex, is a question for the jury to decide.

Defendant filed a separate SMF in support of her Summary Judgment Motion, as required by Local Rule 56.1, M.D. Pa.  (Doc. 42).  Plaintiff did not file a paragraph by paragraph response to Defendant's SMF.  Therefore, to the extent Defendant supports her facts in her SMF by citation to the record, we will accept them as undisputed.  We shall not reiterate Defendant's SMF, and we incorporate the facts contained therein by reference.  (Doc. 42).[7]

---

[6]The record indicates that Mr. Musto had been unlicensed since 1970. (Doc. 46, Ex. 5).

[7]Since the material undisputed facts contained in the Defendant's SMF (Doc. 42) are supported by the evidence Defendant has submitted (Doc. 43), and the Plaintiff has failed to respond to them, we shall adopt them as our own.  Thus, we accept all of Defendant's SMF's supported by evidence, since Plaintiff has failed to controvert them in a response to Defendant's

Thus, we find that Plaintiff has failed to properly respond to Defendants' SMF as required by Local Rule 56.1 of M.D. Pa.  (Doc. 40).  Defendant has offered evidentiary support for her factual paragraphs contained in her SMF.  (Doc. 43, Exs. A-D).  Therefore, we accept the facts contained in Defendants' SMF as uncontroverted, and we incorporate them herein by reference.  *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5  (3d Cir. 2005) (under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record).  As in the *Paranich* case, our Plaintiff did not respond to Defendant's  SMF as required by L.R. 56.1, and we thus adopt all of facts in Defendant's  SMF since they are not controverted by Plaintiff in a response with citation to evidence.[8]

The 2002 Saturn vehicle Mr. Musto was driving at the time of the fatal accident on December 30, 2003, was listed as an insured vehicle on the Tuft-Tex policy with Motorists.  Although Mr. Musto was not listed on the drivers list Motorists requested, in which all drivers of the Tuft-Tex vehicles were to be listed with their license numbers and dates of birth ("DOB's"), Motorists binded the policy without the list.  Further, Mr. Newhart knew or should have known that, for some time, Mr. Musto drove many of the Tuft-Tex vehicles at his leisure.  Also, the Newhart Agency had a duty to review the accuracy of the Tuft-Tex drivers list before it was sent to Motorists.  Mr. Newhart knew there were two (2) Pat Musto's and knew or should have

---

SMF.  *See* Local Rule 56.1, M.D. Pa.  However, we do not adopt any legal conclusions or non-factual statements in Defendant's SMF's such as ¶ 16. of Doc. 42.

[8]*See also Paranich* District Court case at  286 F. Supp. 2d at 447, n. 3.

known that only one Pat Musto (son) was named on the drivers list, despite Newhart's

knowledge that Mr. Musto (decedent) did in fact drive many of the Tuft-Tex vehicles.  Further,

since Mr. Musto was not listed on the drivers list, Motorists did not investigate his driving record.

(Doc. 44, ¶ 9. & Doc. 65, Jones Affidavit).  If Mr. Musto was named on the drivers list, Motorists

would have considered his lack of a driver's license as a material risk in the underwriting

process.  (*Id*.).  Further, the drivers list form which the Newhart Agency sent to Tuft-Tex had a

cover sheet stating  that if an unlisted driver has an accident, "there **may** be no coverage."

(Emphasis added).  (Doc. 44,  ¶ 11., Doc. 46, Ex. 7).  As stated, even though Mr. Musto was not

listed on this drivers list Newhart sent Tuft-Tex, Newhart Agency had the obligation to check the

accuracy of the list prior to binding the policy and sending it to Motorists.  (Doc. 43, Ex. 21, pp.

22-23). This is true especially since Mr. Newhart himself had good reason to know and believe

for some time that Mr. Musto drove many of the Tuft-Tex vehicles whenever he wanted.  In

fact, a 1987-1988 auto insurance policy Mr. Musto had purchased through the Newhart Agency

specifically listed Mr. Musto as the named insured, and listed Mr. Musto as an operator under

the policy. (Doc. 42, ¶ 14., and Doc. 43, Ex. 23).  The DOB on this policy confirms it was Mr.

Musto, decedent, listed as an operator, and not his son Patrick.  Thus, the undisputed evidence

shows that Mr. Newhart and the Newhart Agency had a long-standing knowledge that Mr.

Musto drove, and that he used Tuft-Tex's vehicles.

Joseph Newhart, Mr. Musto's long-time insurance agent who sold Mr. Musto the

Motorists commercial policy at issue, testified that Motorists requested that he get the names of

the drivers from Tuft-Tex (*i.e.* drivers list) who would be insured under the commercial auto

9

policy.  The form used to obtain this driver's information was a Newhart Agency form.  The list

included the names of all proposed drivers as well as their DOB's and license numbers.  (Doc.

44, ¶ 8.).  According to Defendant's insurance coverage expert witness, Haig Neville, since

Motorists' Application did not include the drivers list form, it was a Newhart Agency form and

was not part of the policy at issue.  (Doc. 58).

Newhart testified that his insurance agency typically would send to the insured a form

that they made up, to request a list of drivers.  (Doc. 46, Ex. 10, p. 141).  Tuft-Tex faxed

Newhart Agency a handwritten list of drivers to be insured under the policy.  The list did not

contain the DOB's of the drivers.  (*Id.*, Ex. 6).  Mr. Musto's sons, Patrick and Michael, were

listed, along with his wife Elizabeth.  Mr. Musto was not listed.  This list was not on a specific

form that Newhart Agency used, and it was not on the Agency's format.  (*Id.*, Ex. 10, pp. 140-

141).  Newhart Agency made a drivers list form for Tuft-Tex and sent it to Tuft-Tex.  The form

had the name of the driver to be listed, the driver's license number and DOB.  (*Id.* Ex. 8).

Again, Mr. Musto's two sons and wife were listed.  This Newhart Agency form was completed

by Tuft-Tex and returned to the Agency.  (*Id*, Ex. 10, pp. 141-142).  Mr. Musto, decedent, was

not listed as an insured driver or as a driver that Tuft-Tex was requesting to be insured under the

policy.  (*Id.*, p. 143).[9]

Notwithstanding Mr. Newhart's testimony that he was not supplied with any information

that Mr. Musto was to be an insured driver (*Id.*), as Defendant points out, the Newhart Agency

---

[9]There is no dispute that Mr. Musto did not have a valid driver's license from 1970 until
the time of his death on December 30, 2003. (Doc. 46, Ex. 5).

issued proof of insurance cards to Mr. Musto listing Motorists as the insurance carrier for the insured Tuft-Tex and "Pat Musto, Sr." Mr. Newhart was an agent for Motorists. The effective dates of the policy was August 11, 2001 - August 11, 2002. The insurance cards included the Saturn car Mr. Musto was driving at the time of the accident in question. (*Id.*, pp. 75-79 & Doc. 56, Ex. A). Newhart stated that Pat Musto's name was listed on the insurance cards as "an attention for the mailing" and that the information was derived from within his agency's system. He stated on the format of the system, Pat Musto's name was in the "attention field" for mailing purposes; however, it was not printed like this on the actual insurance cards. The cards simply listed Pat Musto as an insured. (*Id.*). Newhart was authorized to create the insurance ID cards on behalf of Motorists. (*Id.*, p. 80). The insurance ID cards never went to Motorists. (*Id.*). Newhart stated that the insurance ID cards listing Mr. Musto as an insured were the type of card that a person would give to police if they had to show proof of insurance. (*Id.*, p. 82-83).

Paragraph 11. of Doc. 45 is admitted (Doc. 56, ¶ 11.). We shall not repeat it. However, as stated, Defendant's insurance expert opines that since the drivers list was not on the actual Motorists Application, but rather, was a form created by Newhart Agency, this list was not part of the original Application. (Neville Report, Doc. 58, p. 3). Defendant also indicates that Motorists issued insurance coverage and bound the risk without the drivers list. (Doc. 43, Ex. 21, pp. 70-72).

It is not disputed that Mr. Musto was not listed as a driver on the drivers list, and that his DOB and driver's license number does not appear on the list. Mr. Musto's son, Patrick Musto, was listed as a driver on both the initial list, the first handwritten list had his name and license

11

number, and the second list had his name, license number and DOB.  (Doc. 46, Exs. 6 & 8).

Based on the DOB on the second list, January 25, 1950, the Patrick Musto listed was clearly Mr.

Musto's son.  Defendant, however, states that Newhart undisputedly knew that there were two

Patrick Mustos and that Mr. Musto (decedent) drove the Tuft-Tex vehicles, and that he relied

upon the commercial auto policy for his own auto liability insurance.  (Doc. 46, Ex. 10, pp. 26-

27, 86, 90-91).  Newhart stated that there was no effort by Mr. Musto to conceal from him or

Motorists that he drove, since Newhart assumed he drove.  (*Id*., p. 26).  He stated that Mr.

Musto was the decision-maker for the Tuft-Tex commercial auto policy, and Mr. Musto was the

contact person at Tuft-Tex for all of its insurance issues.  (*Id*., p. 27).  Mrs. Musto testified that

she thought her husband was insured under Tuft-Tex's policy with Motorists. (Doc. 42, ¶ 15.,

and Doc. 57, ¶ 5.).

**IV. Summary Judgment Standard.**

    A motion for summary judgment may not be granted unless the moving party is entitled

to judgment as a matter of law.  Fed.R.Civ.P. 56.  The court may grant a motion for summary

judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any

affidavits show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An

issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could

find for the nonmoving party."  *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing

Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

    The burden of proving that there is no genuine issue of material fact is initially upon the

movant.  *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd*

*mem.* 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving

party.  *Id.*  The nonmoving party is required to go beyond the pleadings and by affidavits or by

"depositions, answers to interrogatories and admissions on file" designate "specific facts showing

that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the

evidence in the light most favorable to the nonmoving party.  *White v. Westinghouse Electric*

*Company*, 862 F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's

allegations as true and resolve any conflicts in his favor.  *Id.*, quoting *Gans v. Mundy*, 762 F.2d

338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*,

534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

## V.  Discussion.

This action is filed under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et*

*seq.*, in order to decide a question in actual controversy between the parties.  The Declaratory

Judgment Act provides this Court with the discretionary authority to grant declaratory relief.  *See*

*State Auto Ins. Co. v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000).  This Court has diversity

jurisdiction pursuant to 28 U.S.C. § 1332, as Plaintiff is an Ohio company and Defendant is a

Pennsylvania resident. (Doc. 44, p.  2).[10]

As noted, the parties have consented to the jurisdiction of the undersigned pursuant to

28 U.S.C. § 636 (c)(1).

In making an insurance policy coverage determination, the court must initially decide the

---

[10]A jury demand was made by the Plaintiff.   (Doc. 1).

scope of the insurance coverage and then review the allegations raised in the pleading to see if

they would fall within the scope of the policy if proven. *See Britamco Underwriters, Inc. v.*

*Grzeskiewicz*, 433 Pa. Super. 55, 59, 639 A. 2d 1208 (1994) (citation omitted). Further, under

Pennsylvania law, the interpretation of an insurance contract is a question of law for the court to

decide. *See Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) (citation omitted).[11]

> [I]n Pennsylvania a court construes ambiguities in an insurance policy
> strictly against the insurer. *See, e.g., Selko v. Home Ins. Co.*, 139 F.3d
> 145, 152 n. 3 (3d Cir. 1998) (*citing Standard Venetian Blind Co. v.
> Am. Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (Pa. 1983)).
> Nevertheless, in Pennsylvania, and no doubt elsewhere, "[c]lear
> policy language . . . is to be given effect, and courts should not
> torture the language to create ambiguities but should read the
> policy provisions to avoid it." *Selko*, 139 F.3d at 152 n. 3 (internal
> citations and quotation marks omitted). In construing policy
> language, courts should consider any special usage "[w]here terms
> are used in a contract which are known and understood by a particular
> class of persons in a certain special or peculiar sense [.]" *Sunbeam
> Corp. v. Liberty Mut. Ins. Co.*, 566 Pa. 494, 781 A.2d 1189, 1193
> (Pa. 2001)."

*USX Corp. v. Liberty Mut. Ins. Co.*, ___, F.3d ___, 2006 WL 903192 * 4 (3d Cir. 2006).

After the December 30, 2003 fatal accident involving Mr. Musto, his wife as

Administratirx of his Estate, demanded underinsured motorist benefits from Motorists under the

policy it issued to Tuft-Tex, and demanded that Motorists also provide stacked underinsured

motorist benefits, *i.e.* to stack coverages applicable to all eleven vehicles listed under the policy.

Plaintiff Motorists then field the present Complaint seeking declaratory judgment that it has no

---

[11]Pennsylvania substantive law is utilized in this diversity case as this Court sits in
Pennsylvania. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Gasperini v. Center for
Humanities, Inc.*, 518 U.S. 415, 427 (1996). Thus, we shall apply Pennsylvania law with
respect to the insurance coverage issue as the events in question all occurred in PA.

obligation to provide Defendant Elizabeth Musto with underinsured motorist benefits for Mr. Musto under the Tuft-Tex policy, since Mr. Musto was not a licensed driver listed on the policy, and if coverage is found, then seeking declaratory judgment that it has no obligation to provide stacked underinsured motorist benefits.   Thus, in both its Complaint and Summary Judgment Motion, Plaintiff contends that Mr. Musto's Estate is not entitled to coverage under the Tuft-Tex insurance policy.   Plaintiff submits that Tuft-Tex's policy covered only named drivers on the drivers list it provided, and not an unlicenced and unlisted driver such as Mr. Musto.   Defendant asserts that Mr. Musto had a reasonable belief that he was covered under the policy, since he drove all of the Tuft-Tex vehicles at his leisure for some time, since his insurance agent, Mr. Newhart, was aware of this, and since he did not try and conceal this from Plaintiff.   Defendant also asserts that Mr. Musto was named as an insured on the insurance ID cards the Newhart Agency provided him, that the drivers list was not part of the Motorists' Application and not material to the policy, and that Motorists binded coverage under the policy without the drivers list.   Also, Defendant points out that Mr. Newhart knew there were two Pat Musto's and only one was on the drivers list, *i.e.* the decedent's son.

The rules of contract interpretation must be applied in analyzing an insurance policy.  As the Court stated in *State Farm v. Dunleavy*, 197 F. Supp. 2d 183, 186-87 (E.D. Pa. 2001), the following rules govern the interpretation of a policy:

> The interpretation of an insurance policy is governed by the following rules of contract interpretation: 1) terms must be given their ordinary meaning; 2) ambiguous terms should be construed against the insurer; 3) "a term is ambiguous only if 'reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning;' "and 4) the parties' "true intent must be determined not only from the language but from all the surrounding circumstances." *United Services Auto. Assoc. v. Elitzky*, 358 Pa.Super. 362, 369, 517 A.2d 982 (1986) (quoting *Erie Ins. Exch. v. Transamerica Ins. Co.*, 352 Pa.Super. 78, 507 A.2d 389, 392 (1986)); *See also Mohn v. American Cas. Co. of Reading*, 458 Pa. 576, 585, 326 A.2d 346 (1974) (citing *Burne v. Franklin Life Insur. Co.*, 451 Pa. 218, 226, 301 A.2d 799 (1973)) ("Furthermore, where the contact is one of insurance any ambiguity in the language of the document is to be read in a light most strongly supporting the insured.").

We shall not, for the most part, repeat the relevant sections of the Motorists' policy in this case as its relevant provisions are referenced in Plaintiff's SMF, Doc. 45, and Defendant's, Doc. 42.  The policy is also found at Ex. 4, Doc. 46.

Based on the evidence in the record now before us, we find that there are factual issues which must be decided by the jury.  The issues presented herein, as stated, involve whether Mr. Musto was an insured under the policy, and whether there is stacking of UIM benefits.  We now find that there are material facts in dispute with respect to the issues for jury determination.

Plaintiff refers to the cancellation endorsement of the policy (Doc. 45, p. 8), and the plain language of the instant policy, which provided as follows:

> This policy may also be canceled for an exception, upon discovery
> that the policy was obtained through fraudulent statements,
> omissions, or concealment of facts material to the acceptance
> of the risk or to the hazard assumed by us.

(Doc. 45, ¶ 24.  and Pennsylvania Cancellation Endorsement to Insurance Policy, Doc. 1, Ex. E,
Doc. 46 , Ex. 4.).

The policy also provided as follows:

### Concealment, Misrepresentation, or Fraud

> This coverage form is void in case of any fraud by you
> at any time as it relates to this Coverage Form.  It is also
> void if you or any other "insured," at any time, intentionally
> conceal or misrepresent a material fact concerning:
>
> (a)     This Coverage Form;
> (b)     The "Covered Auto'"
> (c)     Your interest in the "Covered Auto;"
> (d)     A claim under this Coverage Form.

(Doc. 45, p. 9, ¶ 25.).

Defendant points to the UIM Coverage provision of the policy, which provided:

> A.  Coverage.
>
> 1.  We will pay all sums the "insured" is legally entitled to recover
> as compensatory damages from the owner or driver of an "underinsured
> motor vehicle."
>
> B.  Who Is An Insured.
>
> 1.  You.
>
> 2.  If you are an individual, any "family member."
>
> 3.  Anyone else "occupying" a covered "motor vehicle" . . .

(Doc. 46, Ex. 4, Motorists Policy, Pennsylvania Uninsured Motorist Coverage
CA 7076, p. 1).

Further, Defendant's expert opines that based on this stated language of the policy, Mr. Musto was an "insured" under A and B above. (Doc. 58, Neville Report, p. 2).  Indeed, Mr. Musto was occupying a covered vehicle at the time of the accident.[12]

As stated, Plaintiff has sought a judicial declaration in our case with respect to the UIM coverage claimed by Defendant.  Plaintiff is seeking a declaratory judgment as to the standing of Mr. Musto's insured status.  We find, upon review of the record, that this issue presents a factual dispute and is a jury question, not simply an issue involving the interpretation of the insurance contract.  We find that this Court is unable to enter judgment for either party with respect to Mr. Musto's insured status under the policy, and with respect to whether stacking was allowed, and if so, whether a waiver of stacking was made in this case.  (Doc. 56, Ex. B).  There is also a factual dispute as to whether Motorists' issuance of its written consent for Mr. Musto's Estate to settle with the tortfeasor for the latter's policy limits, was an acknowledgment by Motorists as to UIM coverage in this case.  As Defendant's undisputed evidence shows, if Mr. Musto's Estate would have known that Motorists was going to challenge UIM coverage for Mr. Musto, it would not have settled for the tortfeasor's $50,000 policy limit.  (Doc. 42, p. 10).

Thus, the present case presents factual disputes on issues such as whether Mr. Musto had a reasonable belief of entitlement to use the Tuft-Tex vehicles, and whether the Newhart Agency knew or should have known he was using them.  These factual disputes presented in our declaratory judgment action preclude the granting of summary judgment for either party on

---

[12]If Mr. Musto was simply a passenger occupying the covered Saturn vehicle, it appears that he may have had a claim for UIM coverage under the policy.

18

the coverage issue.

As we have noted in our prior Memorandum regarding Plaintiff's Motion to Dismiss Defendant's Counterclaims, Plaintiff's reasonable basis for seeking declaratory judgment rests upon the exclusion section of the policy's "Pennsylvania Underinsured Motorists Coverage - Nonstacked" provision (Doc. 46, Ex. 4).   The exclusion section states in relevant part:

### C. Exclusions

The insurance does not apply to any of the following:

2.  Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

Plaintiff argues that Mr. Musto did not have a reasonable belief of entitlement to use the 2002 Saturn vehicle because he did not have a driver's license for several years prior to the accident, and Mr. Musto knew that driving without a license was illegal due to two previous citations he received for violating the Pennsylvania Motor Vehicle Code.   Plaintiff also notes that Mr. Musto did not provide his own name in filling out the drivers list form the Newhart Agency sent to Tuft-Tex.   Defendant has offered sufficient evidence to raise a factual dispute as to whether Mr. Musto had a reasonable belief that he could use the Tuft-Tex vehicles and if he did, he was covered under the policy, since he had been using them at his leisure, and the insurance ID cards for the vehicles listed him as an insured.[13]   Also, there is no evidence that

---

[13]While Mr. Musto may not have had a reasonable belief that he could legally drive, since he did not have a license for about 30 years, he may have had a reasonable belief that if he used a Tuft-Tex vehicle, as he undisputedly did at his leisure for some time, he was an insured covered under Tuft-Tex's policy.  As to this latter issue, we find a material factual dispute exists for the jury to resolve.

Mr. Musto tried to conceal the fact that he drove the Tuft-Tex vehicles at his leisure from his insurance agent, Mr. Newhart, and in fact, Newhart had an understanding that Mr. Musto drove the vehicles despite not being listed on either of the drivers lists Tuft -Tex sent his Agency.[14]

    1.  *Coverage Issue.*

Based on the record before us, we find that there are several genuine issues of material fact as to whether Mr. Musto was an "insured" under the Tuft-Tex auto policy with Plaintiff Motorists, whether Mr. Musto used the Tuft-Tex vehicles with a reasonable belief that he was entitled to do so and that he was covered by the policy, whether his insurance agent who sold him the policy knew that Mr. Musto  drove the vehicles listed on the policy and that he used the insurance ID card for purposes of proving his liability coverage, and whether these facts rendered him a permissive operator of the Tuft-Tex vehicles, including the 2002 Saturn covered under the policy.

The dispute between the parties centers on whether Mr. Musto was indeed an insured under the policy because he was not a licensed driver in Pennsylvania when operating the 2002 Saturn at the time of the fatal accident, and whether he had a reasonable belief that he could use the vehicles.  A dispute also exits as to whether the drivers list excluding Mr. Musto was part of the policy at issue or whether it was just a document required by the Newhart Agency.

---

[14]Also, as stated, Defendant's expert does not believe that the drivers list was part of the insurance policy at issue, since it was not on the actual Motorists' Application (Doc. 56, ¶ 11.). Further, according to Defendant's expert, since no underwriting standards were provided by Plaintiff to show that Mr. Musto would not have been accepted as an insured driver in 1999, Mr. Musto could have been approved as a driver. (*Id.*, ¶ 15.).

Defendant's expert opines that the absence of a drivers listing section on the actual Motorists' Application renders the list non-material and not part of the Application.  (Doc. 58, pp. 2-3, Neville Report).  Further, it is not disputed that Plaintiff Motorists issued coverage for Tuft-Tex and bound the risk without the drivers list.  (Doc. 43, Ex. 21, pp. 70-71).

If only Tuft-Tex were the named insured on the insurance ID cards, then it could not suffer personal injuries, thus rendering the UM/UIM provision of the policy illusory.  *See Moss v. Federal Ins. Co.*, 2003 WL 751003 * 5 (E.D. Pa.).  However, the insurance ID cards clearly indicate that Tuft-Tex and Mr. Musto were the "Insured" under the Motorists policy.  (Doc. 56, Ex. A).  This evidence is contradictory to the drivers list, which did not include Mr. Musto's name, license number and DOB.  However, the question again arises as to whether this drivers list prepared by Newhart Agency was part of the insurance policy.

Further, while Mr. Musto was not a licensed driver, it was unquestionably known by Mr. Newhart that Mr. Musto drove the vehicles listed on the policy and relied on the insurance ID cards to prove he was covered for liability purposes.  Newhart Agency was an independent agent representing and selling Motorists' products.  (Doc. 46, Ex. 10, p. 10).  Joseph Newhart had been Mr. Musto's insurance agent for many years prior to 1999.  (*Id.*, p. 9).  The Newhart Agency had authority to bind Motorists.  (*Id.*, p. 11).  Motorists had been insuring Tuft-Tex since 1999 through November 2005 without interruption.  (*Id.*, p. 14).  Newhart Agency's principal contact at Tuft-Tex for purposes of dealing with insurance issues was Mr. Musto.  (*Id.*, p. 15).  Mr. Newhart stated that he had no reason to believe that Mr. Musto was not able to drive a vehicle.  Mr. Musto was a cousin of Mr. Newhart's mother.  (*Id.*, pp. 18-20).  Newhart was not

aware of any effort by Mr. Musto to conceal from his agency or from Motorists the fact that he drove.  Mr. Newhart assumed that Mr. Musto drove. (*Id.,* p. 26).  Newhart stated that it was the duty of Motorists to review the drivers lists and check for driving records.  (*Id.,* pp. 51-53).[15] Newhart knew Mr. Musto had a son named Patrick, and referred to them as Pat Sr. (Mr. Musto) and Pat Jr. (Son). (*Id.,* p. 51).[16]  According to a recorded conversation of an interview between Mr. Henry of Motorists and Newhart, Newhart admitted that he was aware that Mr. Musto worked for Tuft-Tex and that he drove any and all vehicles of Tuft-Tex at his leisure.  (*Id.,* p. 86). Mr. Newhart agreed that Mr. Musto drove any and all of Tuft-Tex vehicles at his leisure prior to his death on December 30, 2003, and it was Mr. Newhart's understanding that he did.  (*Id.,* pp. 88-89).  Newhart had no reason to think Mr. Musto did not drive the Tuft-Tex vehicles, despite having no specific information that Mr. Musto actually drove the vehicles.  (*Id.,* p. 90-91).  It was Mr. Newhart's understanding at the relevant time that Mr. Musto could drive a vehicle on the Tuft-Tex policy, notwithstanding the fact that the drivers lists which his agency specifically sent and re-sent to Tuft-Tex did not list Mr. Musto as a driver.[17]

---

[15]As stated, Motorists' Claims Manager (Palamara) testified it was the responsibility of the Newhart Agency to review the list of drivers before sending it to Motorists. (Doc. 23, Ex. 21, pp. 21-23).

[16]As noted above, Mr. Musto decedent was actually Pat Jr., and his son was Pat III.  (Doc. 56, p. 3, n. 5).

[17]To the extent that there is any discrepancy or inconsistency in the testimony of Mr. Newhart, we find that there is a genuine issue of material fact as to whether he knew that Mr. Musto drove the Tuft-Tex vehicles despite not being listed on the drivers list, and that the jury will have to decide this issue.  Further, whether Mr. Newhart was then obliged to advise Motorists of the fact, if known, that Mr. Musto drove the covered Tuft-Tex vehicles, despite not

22

While Mr. Musto may not have been a permissive user of any of the eleven (11) insured vehicles, he was nonetheless a known user by his insurance agent who issued him and Tuft-Tex the policy.  Thus, a question arises as to whether these undisputed facts gave a reasonable expectation to Mr. Musto that he was insured under the policy, and to his agent that he was covered under the policy.[18]

There is no dispute that the drivers list which Tuft-Tex sent to Newhart Agency (Ex. 8, Doc. 46) did not name Mr. Musto as a driver.  There is also no dispute that Motorists issued coverage on the Tuft-Tex policy and that it bound the risk even before it received the drivers list.  It is also undisputed that Newhart Agency did not check the drivers list for accuracy, despite the testimony of the Claims Manager (Palamara) that Newhart had the responsibility to check the list as part of the agent's duties.  (Doc. 43, Ex. 21, pp. 20, 22-23).  When Mr. Newhart received the drivers list from Tuft-Tex, he knew there were two Pat Musto's and only one Mr. Musto's name was on the list.  Mr. Newhart seemed aware that Mr. Musto (decedent) drove all of the Tuft-Tex vehicles at his leisure.  As Defendant points out, the insurance ID cards issued by the Newhart Agency which listed Tuft-Tex and Mr. Musto as the Insured, was certainly some evidence that the Agency was well aware that Mr. Musto drove the Tuft-Tex vehicles,

---

being listed as a driver, and the effects of this knowledge on the coverage of Mr. Musto under the policy, are also matters for the jury to resolve.  Moreover, whether Mr. Musto tried to conceal the fact that he did not have a valid drivers license from either Mr. Newhart or Motorists is also a question of fact for the jury to determine.

[18]The Non-Stacked UIM Endorsement of the policy excluded coverage for "Anyone using a vehicle without a reasonable belief that the person is entitled to do so."  (Doc. 44, ¶ 18. Doc. 46, Ex. 4).

including the 2002 Saturn. (Doc. 56, p. 8).

The issues  of whether Mr. Newhart's failure to accurately check the drivers list and to advise Motorists that it was his understanding that Mr. Musto was not listed, but that Mr. Musto drove all of the Tuft-Tex vehicles, and the effects that these facts would have on coverage of Mr. Musto under the policy, is for the jury to decide.[19]  Thus, even though Mr. Newhart stated that he relies on the insured to provide him with full, complete and accurate information (Doc. 45, ¶ 14.), in our case, based on the nature of the relationship between Newhart and Mr. Musto over many years, and the facts that Newhart knew there were two Pat Musto's but only one was listed on the drivers list, should have caused some concern for Newhart, since it was his understanding that Mr. Musto drove all of the Tuft-Tex vehicles up to the time of his death. Thus, while Tuft-Tex had the duty to truthfully provide Newhart Agency with the drivers list of all persons who drove Tuft-Tex vehicles, a list which did not include the name of Mr. Musto, Newhart Agency also had the duty to check the accuracy of the information provided by its insured prior to binding Motorists to coverage under the policy.  This is especially true in our case, since Mr. Newhart, as stated, knew there were two Pat Mustos, knew Mr. Musto drove the Tuft-Tex vehicles, but only Mr. Musto's sons was listed on the drivers list, and since the Newhart Agency issued insurance ID cards listing Mr. Musto and Tuft-Tex as the insured.  This certainly should have caused some inquiry by Newhart Agency and notification to Motorists.  Thus, there is evidence that Mr. Musto was identified as a named insured on the Tuft-Tex policy even

---

[19]As mentioned above, Plaintiff's evidence indicates that the lack of a valid driver's license is a material risk to Motorists in the underwriting process of the Tuft-Tex policy.  (Doc. 65, Jones' Affid.).  The Neville Report disputes this. (Doc. 58, p. 3).

though he was not one of the licensed drivers listed on the policy.[20]

Notwithstanding the fact that Mr. Newhart stated that Motorists had the capacity to check the drivers records listed on the drivers list and that his Agency did not have the capability to do this, and that he did not recall if he saw Tuft-Tex's drivers list, Newhart had the obligation, at least according to the Claims Manager (Palamara), to check the list for accuracy.  If Mr. Newhart checked the list for accuracy, based on years of his own personal knowledge and not based on a PennDOT drivers license check, which he said only Motorists had the capacity to perform, he should have had some concerns and suspicion since Mr. Musto was not listed, and it was his understanding that Mr. Musto drove all of the Tuft-Tex vehicles.  Thus, whether Mr. Newhart should have reviewed the drivers list provided by Tuft-Tex before sending it to Motorists, and whether he should have cured the conflict, which he knew or should have known existed therein, namely that Mr. Musto drove the Tuft-Tex vehicles but was not listed on the drivers list, and advise Motorists not to bind coverage under the policy, are questions for the jury to decide.[21]

Therefore, we find the issue of whether Defendant is entitled to underinsured motorists benefits under the Tuft-Tex policy contains too many material factual disputes for the Court to resolve.  In short, we find there are factual disputes as to the concealment issue and as to the

---

[20]As mentioned, there is no dispute that the Saturn car Mr. Musto was driving at the time of the fatal accident was a vehicle covered under the Motorist policy.

[21]The above discussed evidence, and the fact that Mr. Musto was not listed on either the first or second drivers list Tuft-Tex sent to the Newhart Agency, seemingly favors Defendant with respect to the concealment issue.

issue of whether Mr. Musto had a reasonable belief that he was entitled to use the Tuft-Tex

vehicles, including the Saturn vehicle in question.[22]   We also find factual disputes as to whether

the insured made knowing misrepresentations of fact such that Plaintiff could deny coverage

under the intentional concealment provision of the policy.   Nor can we determine if under the

disputed facts presented herein there was fraudulent misrepresentation allowing Plaintiff to

rescind the policy.   While we find that Mr. Musto did drive the Tuft-Tex vehicles without a valid

license, we cannot find, based on the present record, that he tried to conceal this fact from

Plaintiff or that he knowingly made a false representation to it.  Mr. Musto openly drove the

Tuft-Tex vehicles at his leisure, and Mr. Newhart was aware of this for some time, and failed to

check into this matter when he should have upon receiving the drivers lists from Tuft-Tex *sans*

Mr. Musto's name.  We find no evidence that Mr. Musto ever tried to add his name to the

drivers list or that he  indicated  to Plaintiff or Newhart that he had a license.  Thus, while

Plaintiff argues the fact that Mr. Musto did not have a driver's license was a material risk to it

(Doc. 65, Jones' Affid.), the facts are disputed as to whether Mr. Musto made a knowingly false

representation to Plaintiff.  As Defendant points out, the Motorists' SIU investigation closed

without any finding of fraud by Newhart and Mr. Musto.  (Doc. 42, ¶ 16.).  *See also* Doc. 57,

Mrs. Musto's Affidavit, averring Mr. Musto did not try to conceal his lack of license from

---

[22]Quite simply, if the jury finds that Mr. Musto's insurance agent (Mr. Newhart) knew or
should have known that Mr. Musto was driving Tuft-Tex's vehicles for almost twenty (20) years
and that he did not have a valid license, then the jury could find that Mr. Musto reasonably
believed he was covered under the policy if he used the vehicles.  Newhart would then have
been obliged to advise Motorists of this fact prior to binding coverage under the policy and
issuing the insurance ID cards.

Motorists.  We will not presume fraud under the disputed facts in the present record, as Plaintiff urges us to do.  (Doc. 63, p. 12).

Accordingly, we will deny the Summary Judgment Motions of both parties with respect to the coverage issue.

2. *Stacking Issue*

Plaintiff also argues that if coverage is found to apply, the Tuft-Tex policy specifically provided that its underinsured motorist coverage is non-stacked.  Plaintiff states that this non-stacking provision is consistent with Pennsylvania law regarding fleet policies.  Defendant argues that Plaintiff failed to get any waiver of stacking under 75 Pa. C.S.A. § 1738.  Defendant also notes that the evidence reveals that the Tuft-Tex vehicles listed on the Motorists policy were driven for business and personal use.  (Doc. 54, pp. 16-17, n. 6).  These facts noted are consistent with the Court's review of the record herein.

There is no question that the policy at issue contained a Non-Stacked Underinsured Endorsement.  This Non-Stacked UIM Endorsement provided as follows:

> Regardless of the number of covered "motor vehicles,"
> "insureds," premiums paid, claims made, or vehicles involved
> in the "accident," the most we will pay for all damages
> resulting from any one "accident" is the LIMIT OF
> INSURANCE for UNDERINSURED MOTORISTS COVERAGE
> SHOWN IN THE DECLARATIONS. (Emphasis in original).

(Doc. 45, ¶ 27.).

The limit of UIM coverage on the declarations page of the policy is $300,000.  (Doc. 46, Ex. 4, Declarations Page).  However, Defendant seeks to stack the UIM benefits of eleven vehicles covered under the Motorists' policy.

This Court very recently dealt with the stacking issue in *Transguard Ins. Co. of America Inc., v. Hinchey*, 2006 WL 1517324 (M.D. Pa.).[23]  In *Hinchey*, this Court stated that "it is settled that stacking is allowable under Pennsylvania's Motor Vehicle financial Responsibility Law [75 Pa. C.S.A. § 1738] ... ."  *Id*. at * 3.  In *Hinchey*, the issue was whether "an officer of a named insured corporation may stack coverage when the corporation, not the individual officer, is listed as the 'insured'".  *Id*.  In our case, Mr. Musto was the principal of the named insured company under Tuft-Tex's policy with Motorists.  On the insurance ID cards for the vehicles covered under the policy, both Tuft-Tex and Mr. Musto were listed as the "Insured".  (Doc. 56, Ex. A ).  The Named insured on the policy's declaration page was Tuft-Tex.  (Dec. 46, Ex. 4, Named Insured  page of policy).   The *Hinchey* Court discussed the relevant statutory language of 75 Pa. C.S.A. § 1738, including the waiver provision relied upon by our Defendant.  *Id*. (Doc. 54, p. 14).

In our case, while Mr. Musto was driving an insured vehicle under the policy (*i.e.* 2002 Saturn), there is a factual issue we have found to exist with respect to his status and whether or not he was a covered driver under the policy, and if he had a reasonable belief that if he used the Tuft-Tex vehicles, he was covered under the policy.  Since we have found factual disputes as to Mr. Musto's status and as to whether he had a reasonable belief that if he used the Tuft-Tex vehicles, he was covered under the policy, we shall deny the Summary Judgment Motion of

---

[23]Since the *Hinchey* case was not decided until May 30, 2006, well after the filing of the Briefs in our case, the parties did not have the benefit of considering this case when presenting their arguments on the stacking issue.

Plaintiff with respect to the stacking issue, and first allow the jury to decide Mr. Musto's status and whether he had a reasonable belief that if he used the Tuft-Tex vehicles, he was covered under the policy.  Then, depending on the jury's decision (*via* special jury interrogatories), the Court will revisit the stacking issue.[24]  In *Hinchey,* Mr. Hinchey was driving a covered vehicle, was an officer of the named insured corporation, was a named individual on the first party benefits endorsement, and the reasonable expectation of the insurer and policy holder was that the Hincheys were covered while using the covered vehicle.  In our case, the evidence is not clear as to if Mr. Musto reasonably believed that if he drove the Saturn at the time of the accident, he was covered under the policy, and if his insurance agent reasonably expected that he was covered since the agent knew he used the Tuft-Tex vehicles.  Hence, our case presents a disputed fact as to whether Mr. Musto was covered under the policy while using the covered vehicle.  Thus, in our case, unlike in *Hinchey*, based on the totality of the circumstances, the factual situation presented is not undisputed, and we must rely upon the jury to determine these disputed facts regarding coverage issue which are not appropriate for disposition on summary judgment, before the Court can decide the stacking  issue.

As stated, we simply find too many factual disputes for the Court to decide the coverage issue by way of summary judgment motions.   We also find the Waiver of Stacking issue raised by Defendant (¶'s 26.-28., Doc. 45), *i.e.* whether Newhart or Motorist obtained a Waiver of

---

[24]It seems to the Court that if the principal (Mr. Musto) of the named insured company (Tuft-Tex) is found to be an insured under the policy with a reasonable belief that if he used the Tuft-Tex vehicles, he was covered under the policy, then he may be an intended beneficiary if stacking is permitted.

Stacking from the insured, and thus whether Mrs. Musto is precluded from stacking coverages applicable to the eleven vehicles listed in the Tuft-Tex policy with Motorists, is a question of fact for the jury to decide.

Therefore, we find that the coverage issue regarding whether Mr. Musto was an insured under Motorists' policy must  be resolved by the jury due to the aforementioned factual disputes that are apparent in light of the record.[25]  We find the stacking issue contingent on the jury's finding with respect to the coverage issue.

---

[25]We also shall lift the Stay we previously imposed on February 13, 2006 with respect to Defendant's state arbitration case since, upon review of the entire record after the conclusion of discovery, we now find that, as in *Bottomer*, the case Defendant relied upon in opposition to the Stay, there are several factually disputed material issues presented in our case that must first be decided by the jury.  Thus, we now find persuasive *Bottomer*'s holding that the two independent proceedings, *i.e.* state arbitration and federal declaratory judgment action, could operate in harmony.  *See Thermal C/M Services, Inc. v. Penn Maid Dairy*, 831 A. 2d 1189, 1194 (Pa. Super. 2003).  As stated, we now find that the question of whether Mr. Musto had a reasonable belief that he was an insured and covered by the Tuft-Tex policy with Motorists is a question for the jury to decide in the present action and not, based on the disputed evidence detailed above, a legal question.  Hence, we now agree with Defendant that there is sufficient reason for her to proceed with the UIM arbitration she filed in state court.

Accordingly, we shall deny Plaintiff's Summary Judgment Motion **(Doc. 44)** with respect to both the coverage issue and stacking issue, and deny Defendant's Summary Judgment Motion **(Doc. 41)**, including the estoppel issue.  We shall also lift the Stay we previously imposed on Defendant's state court Arbitration action.  (Doc. 39, February 13, 2006 Order).

An appropriate Order will be issued.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 29, 2006**

31